The Attorney General is in receipt of your request for an opinion wherein you ask, in effect, the following questions: 1. Is it lawful for a local school board and a teacher to enter into a contract establishing the compensation of the teacher above the state's scale with the amount above the state's scale to be donated to a "Activity Fund" for use in the transportation of students from one school district to another? 2. Is it lawful for a teacher to accept a stipulated remuneration from an "Activity Fund" to transport students in the teacher's personal vehicle from one school district to another? 3. Is a teacher's contract with a dependent school district valid without the signature of the county superintendent of schools? 4. How long may a school district hold funds appropriated to the school district before allocating such funds for specific purposes ? Local Boards of Education are expressly empowered to "contract with and fix the duties and compensation of . . . superintendents, principals, teachers, bus drivers, . . . and other necessary employees of the district and pay their necessary travel expenses, . . ." 70 O.S. 5-117 [70-5-117] (1972). Of course, there is nothing unlawful in a local board of education entering into a contract with a teacher establishing the compensation of the teacher at a level above the state minimum salary schedule. See 70 O.S. 18-114 [70-18-114] (1979). A contract which establishes the compensation of a teacher, does precisely that, establish the teachers compensation. A local school district cannot by contract require a teacher to donate any portion of their contractual compensation to any school, community or charitable enterprise and/or activity. A contract which purports to require a teacher to make such donations cannot, to that extent, be legally enforced. There is, however, no law which would preclude a school teacher from making a voluntary donation to any school activity or any other charitable enterprise and/or institution. Student Activity funds are recognized and regulated by law. 70 O.S. 5-129 [70-5-129] (1977). As it pertains to your second question, 70 O.S. 5-129 [70-5-129] provides: "A. The board of education of each school district shall exercise control over all funds on hand or hereafter received or collected, as herein provided, from student or other extracurricular activities conducted in the school district. Such funds shall be deposited to the credit of the account maintained for the benefit of the particular activity within the student activity fund. Disbursements from each of the activity accounts shall be by check countersigned by the student activity fund custodian and shall not be used for any purpose other than that for which the account was originally created. Provided, the board of education may direct by written resolution that any balance in excess of the amount needed to fulfill the function or purpose for which an account was established may be transferred to another account by the custodian. "B. The board of education of each school district may designate that any of the following revenue be deposited for the use of specific student activity accounts, or to a general activity fund within the student activity fund: "1. Admissions to athletic contests, school or class plays, carnivals, parties, dances and promenades; "2. Sale of student activity tickets; "3. Concession sales, and cafeteria or luncheon collections; "4. Dues, fees and donations to student clubs or other organizations, provided that membership in such clubs or organizations shall not be mandatory; "5. Income or revenue resulting from the operation of student organizations or club projects, provided, such revenue is not derived from the sale of property, supplies, products or other assets belonging to the school district; and "6. Deposits for or collection for the purchase of class pictures, rings, pins, announcements, calling cards, annuals, banquets, student insurance, and other such personal items; provided the cost of such items shall not be charged against other school funds." All other income, revenue, deposits or collections of any nature, including, but not limited to, laboratory fees, fees for the use of equipment owned or rented by the school district, deposits or assessments for breakage or supplies used in instructional courses, sale, exchange, lease, or rent of property, supplies or products originally acquired from funds belonging to the school district or through the management, use or production of property belonging to the school district, shall be deposited in accordance with the provisions of Title 62 O.S. 335 [62-335]." "D. The State Board of Education shall adopt appropriate rules and regulations and design standard forms for the proper conduct of the various student activity accounts." Some student activities necessarily include travel. There is statutory authority for the expenditure of student activity monies to defray the expense of travel in relation to student activities. 70 O.S. 9-108 [70-9-108] (1971). After outlining the types of travel contemplated, 70 O.S. 9-108 [70-9-108] provides: ". . . The expense of any such additional transportation shall be paid by the children so transported, by the school activity or school organization receiving benefit from such transportation, or from other private sources. Money so collected shall not be chargeable to or become a part of the school district's finances." Neither of these statutes state any express or implied prohibition which would preclude a teacher from being reimbursed for expenses or otherwise being compensated for transporting students out of activity funds. Who provides the transportation and at what cost are a matter of contract. The law does not presently concern itself with the monetary specifics of such relationships. In relation to your third question, it is not in all cases necessary for the county superintendent of schools of a dependent school district to sign a teacher's contract. Your attention is called to the recent Attorney General's Opinion No. 79-316 dealing with the requirements of a written contract as to independent school districts. As noted in Opinion No. 79-316, the law specifically contemplates circumstances wherein there will be no signed written contract. See 70 O.S. 6-101 [70-6-101](E) (1971). Except for the circumstances generally contemplated by law as discussed in Opinion No. 79-316, there must be written contracts with the teachers of dependent school districts just as with the teachers of independent school districts. In a dependent school district the duty of approving teacher contracts is fixed by law with the county superintendent of schools. 70 O.S. 4-104 [70-4-104](1) (1971). In the event of incapacity, absence or a vacancy in the office of the county superintendent of schools, the law provides that the first deputy county superintendent of schools, or if there be none, the designee of the state board of education is authorized to perform the duties prescribed by law to be performed by the county superintendent. 70 O.S. 4-105 [70-4-105] (1979). Relative to your final question, assuming a school district is in full compliance with the budget laws of the State of Oklahoma, all funds disbursed by the proper appropriating agency are immediately allocated to separate accounting funds for specific purposes. Appropriations to school districts arise one of two ways, either through the ad valorem tax appropriation process see 68 O.S. 2482 [68-2482] et seq. (1971), as amended, or through state legislative appropriation in the form of state aid, see 70 O.S. 18-109 [70-18-109] (1979). As appropriations are realized through the disbursement of ad valorem tax receipts, state aid or other forms of income, these funds are deposited to budget accounts and funds as specified by state budget law. 62 O.S. 331 [62-331] (1971). Some appropriations are continuing in nature. For example, appropriations of revenues dedicated to sinking funds for the payment of bonded indebtedness do not lapse at the end of any fiscal year but remain available for future application to the principal and interest on the bonds. See, for example, 62 O.S. 333 [62-333] (1971). However, with respects to appropriations which lapse, the law makes specific provision for the disposition of the unexpended balance of an appropriation for any fiscal year. See 62 O.S. 310.4 [62-310.4] (1977) and 62 O.S. 310.5 [62-310.5] (1971). Under these statutes unexpended balances are available until September 30th for application to encumbrances incurred in the previous fiscal year ending June 30. Additionally, the surplus from unencumbered balances of appropriations are available for appropriation by "supplemental appropriation to the current expenses proposed in the current fiscal year in the manner now provided by law." 62 O.S. 310.5 [62-310.5] (1971). It is, therefore, the official opinion of the Attorney General that your questions be answered as follows: 1. It is lawful to pay a teacher more than the minimum salary schedule specified by law, but a teacher cannot be required by contracts to donate any portion of their compensation to a school "activity fund" or other charity; however, nothing in the law precludes voluntary donations by teachers to school activities or other charitable enterprises and/or institutions. 2. Student Activity funds as created and controlled by statute, 70 O.S. 5-129 [70-5-129] (1977), may be expanded to defray the expense of transporting students to and from student activities 70 O.S. 9-108 [70-9-108] (1971), and there is no express or implied prohibition which would preclude a teacher from being reimbursed for expenses or otherwise being compensated for transporting students out of activity funds. 3. The written contract of a teacher employed by a dependent school district must be signed by the county superintendent of schools or in his absence, incapacity, or the vacancy of the office by the deputy county superintendent of schools or, if there be none, by the designated representative of the State Board of Education. 4. All appropriations whether by the county excise board pursuant to 68 O.S. 2482 [68-2482] et seq. (1971), as amended, or by the State Legislature in the form of state aid pursuant to 70 O.S. 18-109 [70-18-109] (1979), are as disbursed immediately allocated to accounting funds having specific statutory purposes 62 O.S. 331 [62-331] (1971) and may be expended at any time during the fiscal year for which the appropriation was made, and unless the appropriation be a continuing appropriation are, subject to disposition, if unexpended, as provided by law. (JOHN F. PERCIVAL) (ksg) ** SEE: OPINION NO. 91-505 (1991) (UNPUBLISHED) **Disposition: ** SEE: OPINION NO. 80-003 (1980) **